Good morning, ladies and gentlemen. Welcome, Judges D'Alba and D'Cy. Welcome you along with me to the Ninth Circuit. We're happy to see you here today. We have a pretty full courthouse. Just a few housekeeping matters before we start. We're here just on one case today, United States of America, and I'm probably going to not do this right. Kaskaskum River Intertribal Fish Commission et al. versus the State of Alaska, 24-2251. And each side has a total of, I guess, 25 minutes a side. So just as a housekeeping matter, expect to be kept to your time. If you are the appellant, that's your total time. So any time you wish to reserve for rebuttal, please, it's your responsibility to keep track of it. But if you tell me how much time you aspirationally would like to save for rebuttal, I'm looking at the clock, and I'll try to remind you the clock counts down and then it goes up. Does it mean I gave you extra time? That means you've moved into overtime. Now, I know that I see on the appellee side, it appears that you've given a time designation. And once again, I'll probably, it says Daniel Helanen, 11 minutes. Nathaniel Amdur-Clark, 7 minutes. You'll correct me, but John M. Lindemuth, 7 minutes. So just so that you know, is it Helanen? Helanen. Are you arguing first? Is it in that order? Okay. For those of you that are 2 and 3, I will give you your time. If we take Mr. Helanen over, don't go into a panic. I see people and you don't have to tackle them and take them off the podium. If we're asking them questions, that's not cutting into your time. You will get the time that you're entitled to. But expect to be kept to your time. But if either of my colleagues or I are asking you questions, you don't have to ask permission. You can continue to answer judges' questions as long as we have questions. I know everyone here came here to say something. That being said, we also have questions. We have to decide your case. So it's important that my colleagues get that opportunity. So we are ready to proceed. And the State of Alaska is ready. Good afternoon. Good afternoon. I'd like to reserve five minutes for rebuttal. Okay. Go ahead. May it please the Court. Michael Connolly for the State of Alaska. In KD John 1, this Court held that navigable waters can be public lands under the reserved water rights doctrine. Three recent Supreme Court cases make clear that KD John 1 is no longer binding on this Court. First, in Sturgeon, the Supreme Court held that navigable waters in Alaska are not public land under the reserved water rights doctrine. That is because the United States cannot have title to a reserved water right. And even if it could, that would give the United States only the right to a specific amount of water, not a plenary right to regulate the river. That holding flatly contradicts the reasoning of KD John 1. Second, in Loperbright, the Supreme Court held that courts cannot defer to an agency's interpretation and must instead adopt the best reading of the statute. But KD John 1 never claimed to have found the best reading. Indeed, even now, the interveners argue for a different reading of the statute, that all navigable waters should be public land. Third, in Sackett, the Supreme Court held that Congress must use exceedingly clear language if it wants to impinge on a state's traditional authority to regulate land and water use. But KD John 1 never found such a clear statement. To the contrary, it agreed that ANILCA says nothing at all about navigable waters. Taken together, it is impossible to reconcile KD John 1 with Sturgeon, Loperbright, and Sackett. Counsel, I'm sorry. What are we to do with the footnote in Sturgeon 2 that says we're not dealing with KD John? Yeah. What that footnote says is it says this issue was not before us, and so we're not saying anything about it one way or the other. And thus it is for this court to decide. No one ever seems to want to say anything about KD John. They've had a lot of chances, and Congress doesn't seem to want to do anything with ANILCA, right? If this is – I didn't catch the first part of your question. Well, the Supreme Court has had opportunities with KD John 1, 2, and 3 to weigh in, and they've not. Congress could amend ANILCA, or they could clarify all of this for it. But in the way that Congress does its work, they haven't done any work on that as far as that goes. And maybe – I don't know – maybe no one cares about Alaska except Alaska. I'm not really sure what the situation is, but then we've had to deal with it all these years, right? Sure. On the Supreme Court, the fact that the Supreme Court hasn't granted certiorari says nothing about the merits of the underlying decisions. Doesn't the silence – you indicated that the footnote just says nothing, and so it's not before them. They're not deciding it, but couldn't that be interpreted really to be a contrary, to sort of not be in your favor because the court felt like the two could be reconciled and so that they need not actually say anything affirmatively? No, I don't think so. The parties in Sturgeon were telling the court over and over, do not reach this issue. And what the Supreme Court has told us in cases like Brown v. Davenport is that the lower court should not assume that the Supreme Court reaches out and decides issues that are not in front of it. And in order for that footnote – But previously in Sturgeon, it seems like – and that's part of what Alaska is being accused of being disingenuous. And they said, yeah, don't disturb Katie John. We don't want you to disturb Katie John. Now you want us to disturb Katie John, right? Well, I don't think we're being disingenuous. The first – the very first argument – Well, they're inconsistent positions. They are inconsistent. Well, our first-line argument in Sturgeon was the issue is not in front of the court. The court didn't have to do so. So leave it alone. Let us win in Sturgeon, and then you come back, and then you win in Sturgeon, and then you say get rid of Katie John. Well, that would imply that this was somehow tactical in order to win Sturgeon. The argument that the state was taking at that time made it far harder to win Sturgeon because everyone was looking at that and saying, how on earth do you reconcile that? But to the inconsistent positions, governments are allowed to change positions when there's a change in administrations. The United States does this all the time. In fact, in this very issue, the United States was previously arguing that the term public lands has to mean the same throughout all of ANILCA. And now it is flip position. Well, and we gave time here so the government could assess their position. And frankly, I'm a little bit shocked that having lived through this for many, many years, that every administration, even though there's little tweaks here and there, they keep saying keep Katie John. Don't blow it up. I mean I was frankly surprised. I was expecting the administration to come in and say, hey, we're dismissing this. Sturgeon gets rid of it. And they didn't. Well, I think that's a good question for the federal government. But what I would say is as far as what this court should look at is look at the concurrence in Sturgeon in the Ninth Circuit. Judge Wynn at the very end says we should stop trying to fit a round peg in a square hole that we all acknowledge is round. And that's what we have here. Sturgeon makes or Katie John 1 makes absolutely no sense in light of the theory and reasoning that was put forth in Sturgeon. And that was that in Katie John it says that a reserved water right can make navigable waters public land. Sturgeon says the exact opposite. And my friends on the other side have never been able to come up with a coherent theory of why that key part of Sturgeon makes any sense in light of Katie John 1. Well, in Katie John 1, Katie John 1 concluded that subsistence fishing traditionally occurred on navigable waters. In light of that reality, why doesn't your interpretation effectively make the rural subsistence priority a subsistence hunting priority and not also a subsistence fishing priority? Because subsistence fishing does happen on waters outside of navigable waters that are owned by the state. This was discussed in the Alaska Supreme Court decision in Totemoff and in the original 1992 federal regulations where they originally interpreted public land not to include navigable waters. And they identified the waters that applied there. And so. So, counsel, let me just get some clarification. So are you telling the court that subsistence fishing generally does not take place in navigable waters? If you had to give me a percentage, what percentage of it takes place in navigable waters? I can't give you a percentage. But what I can tell you is that subsistence fishing does happen in navigable waters that are owned by the federal government and that in lakes, ponds, streams, non-navigable rivers. And I refer, again, to some of the sources we cited such as Totemoff and the 1992 regulations. And I think this makes sense, too. If you go back and look at the history of what was going on with ANILCA, in 1980, Congress passes ANILCA. But in 1978, Alaska had passed a subsistence fishing law. And in that law, that state law covered navigable waters. So I don't think it's particularly surprising that when the federal government was looking at this, they said, all right, we're going to cover federal lands. And when you look at the purposes of it, ANILCA says over and over and over again, it doesn't say we want to promote subsistence fishing and hunting in all of Alaska. It says the public lands. And it carefully defined the term public lands to mean lands, waters, and interests, the title to which is in the United States. And that has to mean something. Well, hypothetically, let's say we agree with you that, Katie, the trilogy is not reconcilable. What happens then in Alaska? There's a state subsistence fishing law. And it applies throughout all of Alaska. And so the same subsistence fishing rights that you have are going to continue. And so as far as what happens as far as how this court would resolve the opinion, there's really two key questions, I think, that are going on here. First, whether this court is bound by Katie John 1. And for all the reasons I've said, I don't think this court — Is that right? Correct. First, you ask, are we bound by Katie John 1? And I think that this, you know, for Sturgeon, Sackett, and Loperbright, this court is no longer bound by Katie John 1. You should be freed to make your own decision. We're going to say that we have to hold that it's irreconcilable, correct? That Katie John 1 is clearly irreconcilable with those three Supreme Court opinions. And if we don't agree with that, then we run into the Miller v. Gammey issue, and I think you lose. Well, I mean this is the Miller issue. What you look at is you look at the theory and reasoning of Katie John, and then you ask, is that clearly irreconcilable with these three Supreme Court cases? And it's not just the holding. And how do we do that with respect specifically to the footnote that states expressly and I think unambiguously that the decision of Sturgeon is not affecting in any way the decision in Katie John? That's – in order to have that understanding of the footnote, you would have to – and the United States makes this argument. You would have to think and conclude that the Supreme Court affirmatively reached out and decided Katie John 1 is correct. They have correctly interpreted Title 8, and we can give public lands one meaning in Title 8 and one meaning for the rest of the statute. There's no way the Supreme Court did that in Sturgeon. But there's also no way that they specifically overruled the Katie John trilogy. Correct, correct. But – So then you're in the middle ground. Let's just say that if you want to argue that's what it says and if they want to argue that the other, then we have to make a determination of whether it's irreconcilable. That's exactly right. If we choose to say that the footnote doesn't say it. What the footnote says is this issue is not in front of us. We're not saying anything one way or the other. Now it goes back to the Ninth Circuit. But they could have said we overrule, that Sturgeon specifically overrules Katie John. Because they made a determination of how to – how the language should be interpreted in another section of ANILCA. And it's the same language. I suppose they could have, but the Supreme Court is usually careful not to reach out and decide issues that are not in front of it. And what this court says in all of its Miller cases is it's not the holding. The Supreme Court doesn't actually have to say we are therefore overruling this Ninth Circuit opinion. What it has to do is it returns to this court, and this court looks at the theory and reasoning of the Ninth Circuit opinion and decides whether there's anything left. So walk us through – walk me through specifically how we would reach that conclusion and grapple with the footnote. And I'm reading the language of the footnote. And I think what you're referring to is the clause before the court says we therefore do not disturb the Ninth Circuit's holdings. You're really relying on the clause that says those provisions are not at issue in this case, and we therefore do not disturb. So you're really wanting us to sort of focus on that first clause to make the determination that they're not really maintaining or preserving or believing there can be some sort of reconciliation between these decisions. They're saying it's not before us, but consider all of what else we're holding in this case to find that this doesn't include Navajo Full Waters. What – exactly. And what the Supreme Court did not want the lower courts to think is that it had prejudged the issue, that it had reached out and reviewed everything in KJ1 and said, yep, this is all good to go. But this is an incredibly divisive issue, as you've seen from 400 pages worth of briefing here. And so the Supreme Court said this issue isn't before us. We're not saying anything one way or the other. Again, in order to accept their position – and the United States, again, argues this – you have to think that the Supreme Court said, yep, this thing should stand for all time. And the Supreme Court doesn't do this. In Brown, again, there is language from the Supreme Court that says don't read our opinions to reach out and decide issues that are not before the court. Well, under the clear statement rule, given that the judges in KJ2 disagreed over how the clear statement rule should apply to this case, how could we revisit that issue under Miller v. Gammy? Aren't you just arguing that KJ2 was wrongly decided under the law at the time? No, I don't think so. So first of all, in KD1, there had never been a clear statement rule from the Supreme Court dealing with land and water use. In KD2, the debate that was happening between Judge Tallman and Judge Kaczynski was the strength, whether it was a super strong clear statement rule or just a clear statement rule. And Judge Tallman pointed to these old Atascadero and Gregory cases and said those are the super strong statement rules. That doesn't apply to this. Well, I think Judge Tallman made a lot of sense. The only problem was he was in – it's not the holding, right? He wasn't in the majority. But he made a lot of sense. Well, we disagree, of course. We think that Judge Kaczynski got it right, that public lands, you don't have – under the reserve water rights doctrine, you don't have title to the navigable waters. And even if you did, that would only give you the right to a certain amount of water. And so can't be public – navigable waters can't be public lands under ANILFA. That is the argument we would make. What about the congressional ratification argument that in the 1999 Appropriations Act, it seems that Congress established two possibilities. The first is that Alaska took action to amend state law by October 1, 1999. Alaska would get $11 million to implement Title VIII. The second is that if Alaska failed to act, the federal agencies would get $11 million to implement Title VIII. But either way, Congress recognized that the geographic scope of Title VIII included navigable waters and did not limit it. Why doesn't that show that Congress ratified Katie John 1? Because ratification is a very – congressional ratification is a very, very high standard to meet. And that simply didn't happen here for the reasons we recently laid out in our letter. One, the regulations at the time said the opposite. They said navigable waters were not public lands. Two, Katie John 1 was just a decision on interlocutory appeal. This whole decision would be revisited in Katie John 2 just a few years later after that, in Katie John 3, where the scope of the regulations was still at issue. And then I'd also point you to pages 37 through 40 of the United States brief in Sturgeon. They made this exact same ratification argument to the court. Supreme Court obviously didn't buy it. And finally, again, if you look at the recent Alaska v. FSB case, when they talk about congressional ratification, the most they're willing to say is that it reinforces what they determined was a strong textual argument. We don't have a strong textual argument here. And so I don't think that we can fall back on the congressional ratification, this congressional ratification argument here. One other thing I wanted to turn to is the purpose. You know, there's a lot of argument about, you know, the purpose of this. And it's something that the court was talking about all the way back to Katie John 1. But the court in Sturgeon, at the very end of its opinion, deals with this exact same issue. The United States made an argument. The United States said, look at the purpose of ANILCA. Surely we should carve out a special argument for what public lands means because it talks so much about the rivers. And at the very end of the opinion, Justice Kagan says, no, the purpose, the generalized purpose of a statute can't override the clear meaning of the statute. And it said here there is a specific term called public lands, and we're bound by those terms. And so this court simply can't go back to sort of a generalized idea of the purpose of the statute. We're bound by the terms. And the terms here say that navigable waters are not public land. On the different meaning, this is really the only way they've tried to reconcile. My friends on the other side have tried to reconcile how it can mean one thing in Katie John or one thing in Title VIII and another thing in the rest of the statute. That's a really hard argument to make. It almost never works. Again, the court addressed this at the very end of Sturgeon. The court in Amoco also addressed this. There was an argument where they said the Outer Continental Shelf should be interpreted differently for Title VIII. The Supreme Court rejected that argument there. And the reason is that when you define a term, and in Section 102, ANILCA says this will apply throughout the entire statute, that is, quote, virtually conclusive about the meaning of the term. I think I know what your answer is, but I'm going to ask the other side because I think it's a harder question for your friends on the other side. Given Sturgeon II's discussion of public lands, can we still conclude that the term is ambiguous? And if so, how? No, the term is not ambiguous. We know from Sturgeon how you look at this question, how you analyze it. The state owns the navigable waters. So the United States does not have title to them. And this idea of ambiguity after Loperbright, we can't go there anymore. This court has to find the best reading of the statute, and the best reading of the statute is not Katie John One. So under the technical reading of Title II, can the United States hold Title II any body of water? And if not, doesn't your interpretation only give meaning to the term lands and not to the term waters? It can. The United States can. And the way you think about this is when Congress put in the word waters, it wanted to make clear that the United States can own waters. And how do you figure out whether they own waters? You look to the land underneath. And the United States owns lakes, ponds, non-navigable streams, that sort of thing, by virtue of the land underneath the water. I want to reserve your time. Yes, please. Let me make sure my colleagues don't have additional questions right now. Okay. I'll give you five minutes on rebuttal. Thank you. Good afternoon, Your Honors. Good afternoon. I'm Daniel Helinen for the United States. The question before the Court today, ultimately, is whether Title VIII of ANILCA authorizes the Federal Subsistence Board to regulate subsistence fishing on navigable waters. And the Court clearly has already addressed that issue and resolved it in Katie John, which remains binding precedent in this circuit. Alaska, as we've heard today, thinks that Katie John was wrongly decided, but that is not the standard that the Court needs to apply today. Well, it is a little – you know, having been involved with this previously, it's a little torturous here. And it doesn't – you know, there's sort of an appeal to Sturgeon II in that it's clean. It just – we don't have to engage in all the reserve water rights, all of this. It's just – it's clear. So we have to decide whether it's irreconcilable, right? Yes, that's right. And I would agree that the first step is to determine whether it is clearly irreconcilable. And we think it is not clearly irreconcilable with Sturgeon precisely because the Supreme Court said it wasn't in that footnote. Well, I don't know that you don't overread that. So I want to be clear about what we're arguing. We're not saying that the footnote conclusively is resolving whether Katie John is correctly decided or upholding Katie John. I don't think that's the way to understand our position. What we've said is that in order for the Supreme Court to reach out and include that footnote, it had to be premised on the notion that these can be reconciled. The Supreme Court was interpreting the definition of public lands in Section 102 as it applied to Section 103C in that case. And, you know, of course, in the Title VIII context, folks are coming to the Supreme Court and saying, look, this is an important issue and this is the same definition. And the court says we're not going to resolve that and this is – and we are not disturbing the court's precedent. Well, the court has not been anxious to weigh in on this. And Alaska is one state. And by virtue of denying cert in the past, I never took that as that we got it right. I took it as they didn't really – they weren't going to really tell us we got it wrong. So I think we still have to – I just don't think it's an automatic that they're irreconcilable or reconcilable. I think on the question of whether it's clearly irreconcilable, the Supreme Court's footnote is helpful on that clearly aspect of it. You know, it could be ultimately that the court, if it were to look at this issue, says that, yes, Sturgeon, you know, it should be the way that we think about the Katie John issue as well. But the court didn't get there. It said – Well, but it wasn't – that case wasn't before the court. And that case had been going on forever. And, in fact, Katie John died after Katie John III. So, I mean, it's well exceeded her lifetime. So why they would want to take on something that incredibly complicated when it wasn't before them, that's – I think that can be one explanation. We'll leave that for another day if we have to. We'll do it if we have to. I'm surprised, though, that – tell me what are the parade of horribles if we were to find that Sturgeon II, that they're not – that it is irreconcilable and Sturgeon II now wipes out the Katie John trilogy. What are the parade of horribles here? I think subsistence fishing on navigable waters is incredibly important to rural Alaskan communities. Well, Onilka seemed to say that. And so we think that if the court were to conclude that Title VIII doesn't authorize federal regulation of subsistence management, that that would undermine Congress's purpose in having a federal statute that protects the customary and traditional way of life and the use of subsistence fishing by these communities and protect – But the federal government was willing to let that – Alaska do it at some point, but Alaska couldn't get its act together, and so then the federal government stepped in. So –  But if Alaska were to assume control of the Title VIII subsistence management program, it would still need to implement the rural subsistence priority on navigable waters consistent with Title VIII. It would have to be certified by the federal government. So regardless of who's administering the program, it would still be a substantive requirement under the statute. And so we think that holding that Title VIII doesn't authorize that type of regulation eliminates, you know, the federal mandate from Congress to protect subsistence fishing on navigable waters. So if – probably if there were enough fish to go around for everyone, we wouldn't even be here, right? Probably. I suppose so, Your Honor. I guess I'm not really understanding how you're distinguishing your fishing regulations to the hovercraft regulations. And it seems to me that they're quite analogous. So why, in one instance, would it be okay here, and in another instance you're saying that that would not constitute an appropriate regulation? So I think in Sturgeon 2, the Supreme Court's resolution of the issue was ultimately fairly narrow by looking at whether the hovercraft regulation implicated the United States' interest in the Nation River in the reserved water rights. And I think the distinction between the interest that was at issue in that case and the interest that's at issue here is all of the congressional findings and the purpose that Congress made very clear in Title VIII of protecting subsistence fishing, which was simply not something the court had to consider when it was looking at Section 103C, precisely because Alaska and others had invited the court not to reach the Title VIII question. So if the court were to look at that, that would undoubtedly inform and potentially alter or expand on how the court looked at the interest question in the context of Section 102 and the definition of public lands. Well, would you concede, though, that since in Sturgeon 2 they gave a definition of public lands that it's not ambiguous anymore? That's a tough argument for you. I think after Loeb or Bright, what the Supreme Court has told us is that every statute has a best reading. And I think that the Supreme Court's decision in Sturgeon 2 certainly doesn't resolve the best reading of the title issue. I think that is something that the court did not reach. And then the court looked at the meaning of interest in the context of Section 103C. And I think you can have a different understanding of what an interest is in the subsistence management program under Title VIII, specifically because Section 103C is a provision that is essentially creating an exception to generally applicable federal rules, sort of exempting Alaska from other regulations that would otherwise apply, whereas Title VIII is expanding sort of federal regulation of this area and looking at an interest in rural subsistence that the Congress was trying to protect. So that's why we think that the interest at issue in this case, even if you look at the interest defined in Section 102 as the reserved water rights, you have to look under the analysis of Sturgeon at what the purpose of the reservation was. When the United States withdraws land from the public domain, it reserves water rights that are necessary to fulfill the purpose of that reservation. I think your friend on the other side is saying we shouldn't even go there, that we can't look at the purpose because we are stuck with the terms. And the terms supersede and trump the purpose every day of the week. Well, I think the term just says interest. And when the Supreme Court looked at that in the context of Section 103C, it said, well, look, the purpose of this reservation is in maintaining a sufficient volume of water to support the reservation of land. And here that plays out as the diversion or depletion of water. And the hovercraft regulation doesn't implicate that. Here we have a national wildlife refuge that was created in part for the protection of fish and wildlife resources. A Title VIII program that is expressly for the purpose of protecting subsistence uses. And so the purpose of the reservation as applied in this context makes the interest different. So I think when you just look at the definition of the term interest, you still have to look at what the interest is in the context of the reservation and what the purpose of the reservation is that the Congress was trying to accomplish. And so that's why we think the interest embodied in Title VIII make this different from the Section 103C context in Sturgeon II. So I know you make the judicial estoppel argument. Can you tell me exactly what, from your perspective, that the position was that was taken in Sturgeon II that you feel is either disingenuous or makes it inconsistent to take the position they're now taking? So our argument on this point is relatively limited. What we're saying is that it's inconsistent for them to tell the Supreme Court that they do not need to resolve the issue with respect to Title VIII in Sturgeon II and then to come tell this court that the Supreme Court did resolve the issue conclusively with respect to Title VIII. So we don't think that's an appropriate way to resolve issues of precedent. So who made the argument? Who specifically? Was it the same lawyer here or was it another lawyer? They were the amicus. Alaska was not the amicus. It was the state of Alaska as amicus, yes. That's right. And so we think, you know, because the Supreme Court in that footnote cited Alaska's brief saying, you know, we're not reaching this in part because Alaska has informed us that we don't need to get into this issue to resolve this case. Then for the state to come in and tell this court that the Supreme Court did resolve it, I think, is inconsistent. We're not saying, as my friend was pointing out, that they can't change their mind about their substantive position on Katie John or ANILCA. What we're saying is limited to the precedent point that they can't go to the Supreme Court and encourage them to not resolve an issue and then tell this court that the Supreme Court did resolve it. They haven't really gotten any unfair advantage here by doing that. I mean, we're still we're still digging in. I welcome that. You made a couple of alternative ways that we could affirm here. I didn't really find those that persuasive. But and possibly you were asking us to find affirm on things that were ruled out in Katie John one. What were your alternative theories that if you didn't win on your primary argument, you gave us a couple of alternative arguments where you said you could win. One of the points that we made in our brief is related to a related re-litigation bar and issue preclusion. We think that this court needs that that it's appropriate to establish a final resolution of this issue at some point. You know, this has been the status quo for decades. Katie John has survived, you know, an en banc petition, multiple cert petitions. And yet in 2021 and 2022, Alaska proceeded as if Katie John was not good law. And we think this court's precedent has to be respected as good law. And at some point, Alaska has to be has to acquiesce in recognizing that Katie John controls and that re-litigation of the issue indefinitely does not serve the purposes of finality. I see that my time has expired. But if the court has further questions. We don't have any additional questions. Thank you. Thank you so much. Good afternoon. May it please the court. Nathaniel and Clark for the River Intertribal Fish Commission. Ms. Lindemuth and I will be dividing topics today. And I'll be addressing the fundamental link between navigable waters, subsistence fishing, as recognized in the Katie John cases, as well as a subsequent statutory history that confirms those holdings. And Ms. Lindemuth will be focusing on the reservation of fishing rights in the Statehood Act. So this court should affirm for at least two reasons. The first is that this case comes from a very specific context. It comes from subsistence fishing and subsistence fishing for salmon. That salmon fishing is the foundation of the subsistence way of life. And it's that way of life that Congress was protecting both in Title VIII and when it reserved the Yukon Delta National Wildlife Refuge. This court recognized that context in Katie John I. And when it held a quote that you quoted earlier is that we have no doubt that Congress intended that public lands include at least some navigable waters. The reasoning underlying that holding hasn't been addressed at all by the Surgeon Court, much less undercut. Well, I think Judge D'Alba asked a question previously that your friend on the other side couldn't answer. Could you please address whether the communities that live on the, pronounce the river. The Kuskokwim, Your Honor. Kuskokwim.  Kuskokwim. River fish in any non-navigable waters? And if so, how much? So to answer that question, the answer is yes, a tiny bit. Right. So there are streams and ponds. Right. And people do fish occasionally in those. But that fishing is not the fishing that underlies the subsistence way of life. Right. So as a bit of context here, it's worth noting that along the Kuskokwim River, people in the villages there harvest about 360 pounds of subsistence foods for their families per person per year. That's a lot of food. Right. So are the communities that live on the Kuskokwim River connected to the road system or does the river serve as the road? The river is the road, Your Honor. Okay. So the fish that I was talking about, right, it's almost all salmon. A large percentage of it is salmon. And almost all of it is caught on navigable rivers. And I think that that's why the Alaska Supreme Court in the Totemoff case got it wrong or kind of missed the boat a little bit is that what Congress was trying to do was protect the subsistence way of life, subsistence fishing way of life. And you can't do that without navigable waters. It's just impossible. So, yes, there's some fishing that happens, but it's essentially de minimis. So tell me the parade of horribles from your perspective if this court were to accept the argument made by the appellant. I think there's a practical parade of horribles and there's also a legal parade of horribles. The practical one is that the tribes and the United States who co-manage the river will no longer be doing that. It will be managed by the state using the state's fisheries rules, which have led traditionally to a major decrease in the viability of the resource. And it stops the tribes and the federal government working together to be able to rebuild the fishery, which is what they've been trying to do. On the legal side, it also undermines both the specific purpose, but it also makes the statute not work anymore. As has been pointed out in our briefing, Congress used the term fishing 48 times in Title VIII in subsistence fishing, and it's a subsistence fishing way of life. And that can't happen. The statute no longer works. There's also a point, which I don't think came up in our briefing, but I think it's worth noting is that Section 811, which was talked about in the Cate case that this court came out with earlier this month, notes that the secretaries have to allow motorboat access for subsistence fishing. By definition, motorboats only happen on navigable waters because you can't have boats on non-navigable waters. That's the definition of navigability. The statute no longer works. The context that I was talking about earlier about the importance of subsistence fishing is the reason that Congress created the Yukon Delta National Wildlife Refuge in the first place. If you look at Section 3037B of ANILCA, Congress said that the refuge was created to provide the opportunity for continued subsistence uses by local residents. That can't happen if they can't protect fishing on navigable waters. The second point is that ANILCA's statutory history confirms that the circuit and the secretaries correctly applied ANILCA in the Cate John cases. Congress twice enacted amendments to Title VIII that confirmed those understandings. Your Honor, you correctly went down the timeline here. The whole motivation for those amendments, the underlying thing that was happening is that the secretaries had first in 1996, I'll note that's after the Supreme Court had denied cert in Cate John. Cate John was the law of the land. It was not an interlocutory appeal. It was the law. Congress, there was first an advance notice of proposed rulemaking and then a proposed rule specifically to implement Cate John to do subsistence management on navigable waters. Congress said, hey, hold on. Let's give the state a chance to have a constitutional amendment so that it can implement, again, the subsistence priority, again, on navigable waters across the state of Alaska. And if not, not only did Congress say, okay, you go ahead, and knowing that the proposed rules would become rules, which is what happened, they provided $11 million, $8 million to Interior and then $3 million to the Forest Service in order to implement that. That is not congressional inaction under Sandoval. That's positive legislation. And under the Supreme Court's short case, that's virtually conclusive that the United States and this court had correctly interpreted it. So unless you have any further questions, I see that my time is done. Thank you very much. I appreciate it.  Thank you for your argument. Good afternoon. Good afternoon, and may it please the Court. Johnna Lindy-Muth for Alaska Federation of Natives. This case involves the proper interpretation of ANILCA. The state made an important concession in its reply brief at 68 to 70 that this is not about congressional power. Congress has the power to enact a rule subsistence priority on navigable rivers. The question is whether Congress intended to do so. Now, this court in Katie John 1 recognized that Congress clearly intended to grant a rule subsistence priority to fish, given how many times fish was mentioned in Title 8. The real question, the real debate was which waters did Congress intend those priority to exist. So were you Attorney General at the time of Sturgeon 2? I was, Your Honor. So, and you signed Alaska's amicus brief in that case. In the brief, Alaska wrote that rural Alaskans rely on Katie John, including because subsistence fishing accounts for a significant portion of their dietary needs. Is that any less true today? No, it is not, Your Honor. It's very true. And, indeed, the state's own record that is submitted in this particular case supports that it's about salmon and it's about salmon on navigable rivers. And I point this court to the excerpt of record at 96, which is the Fishing Game Report to the U.S. Fish and Wildlife on Salmon. I point this court to the state's excerpt at 67, which points out that there's 18,000 tons of wild foods taken annually, 56% of which is fish. And, indeed, Commissioner Vincent Lange's own declaration, Excerpt 314 to 316, which establishes the importance of salmon on the Kuskokwim itself and the life cycle of the salmon returning from the ocean. So this is about navigable rivers and it's about salmon particularly. Well, can you make a couple of alternative arguments? And one is the navigational servitude interpretation. You make an alternative argument for affirmance that the United States holds Title II as navigational servitude. Why aren't we still bound by Katie John 1's rejection of the navigational servitude interpretation? Your Honor, our primary— I mean, you can't kind of have it, you know, everyone wants it every which way, but— Right, I think the state's trying to have it both ways, Your Honor. So you don't need to be bound. I mean, we are bound by Katie John if Sturgeon is read to be consistent with Katie John. And so only if Katie John is found to be clearly irreconcilable are we back to the original question because this Court still needs to interpret ANILCA Title VIII, which is something that the Sturgeon Court did not do. It did not reach what did Congress intend in enacting Title VIII of ANILCA. Now, the question here today— So let me just understand your argument. You're saying if it is irreconcilable, then the Katie John trilogy is gone. So don't worry. Now you're making the argument that was made in Katie John 1 and rejected. Right, because this Court still needs to reach the proper interpretation of what Congress intended. And if it wasn't using the reserved water rights, is there some other theory that gets you to the proper interpretation of ANILCA? Because the obvious outcome is that the priority has to apply to some navigable rivers. The question is which ones. Now, in Sturgeon, the Court held that Congress did not intend under 103C to apply regulations and rules that are from outside of Alaska to apply to parks and refuges outside of Alaska under the Organic Act to Alaskan. But it did not decide— And so the question is, did Congress then also intend in enacting Title VIII to exclude those very waters that are normally subject to broad regulation outside of Alaska from the very provisions in Title VIII itself? And the answer is clearly no. The way to reconcile Katie John and Sturgeon, and I believe Mr. Hallinan touched on this, is about the nature of the reserved water right itself. It can only be used for purposes of the reserved right. And what the federal government was attempting to do in Sturgeon was bootstrap its rights under the reserved water rights doctrine for purposes of subsistence, to have broad application of rules and regulations under the Organic Act that have nothing to do with subsistence. And so what the Supreme Court held in Sturgeon— Unanimously, I might add. Exactly. The import of it is that you can't use a reserved right for purposes unrelated to that right. And that is where the Supreme Court dropped footnote two at the end of that statement. Well, okay. There are also another alternative fishing rights held in—you held in trust interpretation. You make an alternative argument for affirmance that the United States holds Title II fishing rights that it holds in trust for Alaska Natives. Putting aside Section IV of the Statehood Act, do you have any other authority that shows that the United States has been actively holding fishing rights in trust for Alaska Natives in the relevant waters? So there's—in Title IV— Aside from Title IV. It reserved its right. It reserved its ability to do that. And then in ANILCA, it actually implemented those fishing rights that it intended to reserve to itself. And the purpose of Title IV was to make sure that Congress had the tools in its tool belt going forward and said, hey, we know we need to deal with subsistence rights for Alaska Natives in the future. But when Congress enacted ANILCA, it didn't just rely on one particular provision in the Constitution. It relied on the Property Clause, the Commerce Clause, and then the Constitutional Authority over Native Affairs. And it did so in 801. And in doing so, it pulled all of its tools from its tool belt in order to make sure that it had a subsistence priority. And whether it's all navigable rivers or those that are running through those lands, it clearly intended to do at least one of those two things, whether it's limited to the parks and refuges and the rivers running there through or whether it's to all navigable rivers in Alaska. I see I've exceeded my time. We ask that this Court affirm Katie John and find that the proper interpretation of ANILCA is to apply to navigable waters. Okay. Thank you. Thank you. All right. We have five minutes for rebuttal from Mr. Connolly. Thank you. A few points in response to my friend's argument. First, what will happen if the state prevails? The situation will be far better. First, the state has a strong subsistence fishing law. No one disputes that. Second, the regime will be much better. Right now, it's a balkanized regime. So you have the feds who are managing only part of the river. But as the Vincent Lange Declaration, this is on page 310 of the record, shows, that leads to overfishing. The state is in charge of managing the entire river. But what happens is when the federal government is managing only part of the river, it leads to overfishing in that area and not enough fish for upstream. These are real harms for real people. Also, although it doesn't affect very many people, there are the majority of Alaska natives do not live in rural areas. And so there are individuals and families that return from the city to the rural areas to engage in subsistence fishing. Alaska law allows that. So the factual regime will be much better if the state can prevail. Second, on judicial estoppel, this is a very, very, very high bar or high standard that is very rare. And here it doesn't apply because there is no risk of inconsistent determination. And what judicial estoppel is getting at is where a court would be forced to say A and then in the next opinion would say not A. Here in Sturgeon, in footnote 2, all it says is we're not reaching the issue one way or the other. And so that would not, there's no risk of contradicting Sturgeon. Now, yes, the state has a different position. But like I mentioned, that happens all the time when there's been a change in administration. And frankly, this is far more defensible. It's the same position that Judge Wynn took in Sturgeon. It's the same position that the United States took in Sturgeon. And it's the same position that was outlined in Amico. And so this position is far more defensible. Back to footnote 2, again, what Lindsay tells us is that we look at the theory and reasoning. We don't look at the holding. We don't try to see whether there are alternative reasons to come up. And there is another opinion that I would cite too, SEIU versus Los Robles. Judge Callahan, I believe, Your Honor, was on this opinion or on this panel. And in this case, the Supreme Court in a case called Granite Rock expressly did not reach an issue, it was in a footnote, about whether an arbitrability issue was for the court or for an arbitrator to decide. And when it came back to the Ninth Circuit, this court said it doesn't matter. When you look at the theory and reasoning of what the Supreme Court did in Granite Rock, that overrules and that makes clearly irreconcilable what was happening in the Ninth Circuit opinion. And so, again, I think the other side in the district court is really overreading this footnote. And what this court needs to do is look at the theory and reasoning of Katie John. Counsel, does it make a difference that most of the subsistence fishing happens on navigable waters and not in lakes and streams that are not navigable? I don't think it does. And I think if you look at the history of ANILCA, what they were coming into, the 1978 state law already protected subsistence fishing throughout all navigable waters. And so I think it's logical that Congress didn't feel the need to try and go after navigable waters. What did it do? It went after federal lands, and federal lands are lands the title to which are in the United States. And, again, when you look at what ANILCA is talking about, when it's talking about subsistence fishing and hunting, it's not saying in all of Alaska. And to use what the language the Supreme Court did in Amoco, Congress did not just wave its hand at Alaska and say subsistence fishing and subsistence hunting. Over and over again, it said public lands. And public lands, it carefully defined it, and that language has to be given meaning. Finally, sturgeon, I still haven't heard any way in which, even if you give public lands a different meaning in Title VIII versus the rest of the statute, even if we get past all of this case law that says we shouldn't do this, I still haven't heard any rationale how that makes a lick of sense when given the reasoning of sturgeon, except for this one footnote where the Supreme Court said, this issue is not before us and we're not reaching it. And that's clearly in line with what the Supreme Court has done in the past. And I think the ultimate result is that Katie John 1 is not good law, and this court should be free to reach its own decision and find that navigable waters are not public land under ANILCA. Thank you. Thank you, both sides, for your arguments in this very difficult case. And I would like to say we've seen the last of everyone, but I wonder if that's true or not. But both sides did an excellent job, and the argument was helpful to us. Thank you very much.
judges: CALLAHAN, DESAI, ALBA